In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1013

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROYCE SPANN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-CR-30131-WDS-1 — **William D. Stiehl**, *Judge.*

ARGUED JUNE 11, 2014— DECIDED JULY 3, 2014

Before WOOD, *Chief Judge*, and POSNER and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant was charged with possession of more than 100 grams of heroin with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i). He pleaded guilty and was sentenced to 97 months in prison. His only challenge on appeal is to the sentence.

The sentence was at the top of the guidelines range of 78 to 97 months' imprisonment. But at the sentencing hearing the government had argued for an above-guidelines sentence of 180 months, on the ground that the 753.2 grams of heroin that the defendant had possessed was of higher than average purity (39.7 percent versus an average of 36.6 percent in the Southern District of Illinois) and therefore more dangerous to the user, and that in 2012 heroin had caused 30 deaths in the Southern District's two largest counties (Madison and St. Clair). But the defendant's lawyer pointed out without contradiction that the average purity level of heroin for the nation as a whole is 59 percent, and that the government had presented no evidence of the number of heroin deaths in the Southern District relative to either the population or to the number of deaths caused by other drugs, and had offered no comparison of the heroin death rate in the Southern District to that in the nation as a whole. There was no evidence that any of the defendant's customers had died as a result of ingesting the heroin that they had bought from him.

The judge rejected the government's proposal for a 180-month sentence. The 97-month sentence that the judge imposed instead was as we said the top of the guidelines range, and the reasons he gave for going to the top of the range were terse. He said that trafficking in heroin "is a very serious crime … for what it does to the people who use … heroin. The Defendant himself has become an addict of several narcotics and he sees now where that has brought him. … What he was doing was helping to injure people all over the area. This [97-month sentence] will give him time to try to obtain while he is in prison some skills that will help him when he gets out of prison."

After the judge had finished reading the sentence (including conditions of supervised release, not contested in the appeal), the defendant's lawyer said—in response to the judge's invitation "now do counsel know of any reason why [the] sentence should not be imposed as stated?"—that he had "a question. The Court has elected to sentence [the defendant] to the high end of the guideline range. And what I hear the Court say is that the offense is serious because of heroin. I'm curious why the high end rather than the low end." It was an ingenious question. All, really, the judge had said in justifying the sentence, besides the fact that the defendant needed time in prison to learn lawful work skills (but 97 months to learn such skills?)—and in basing his sentence even in part on that consideration he was violating the rule of *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011), that rehabilitation, while relevant to determining conditions of supervised release, is not to be used to affect the length of a defendant's prison term—was that trafficking in heroin is a serious crime. That certainly justified a sentence within rather than below the applicable guidelines range. But the judge had said nothing to suggest that the defendant was deserving of a harsher punishment than any other heroin trafficker in the same guidelines range. The logical implication of that omission, though not necessarily intended by the judge, was that he thinks every such trafficker should be sentenced at the top of the range, or at least every trafficker who cannot show unusual circumstances justifying a sentencing reduction. The government's lawyer had taken the same approach. He had based his request for a 180-month sentence not on any respect in which the defendant might deserve heavier punishment than other heroin dealers in his guidelines range but on the respects in which the defendant

was indistinguishable from other heroin dealers; for the government's lawyer just mentioned averages.

Maybe the judge was misled by the lawyer's failure to particularize the defendant's criminal activity; but whatever the cause, the judge failed to justify the sentence he meted out to the defendant. He said nothing, for example, about the quantity of heroin that the defendant had distributed or the actual consequences for any of the defendant's customers. A federal judge is not permitted to pick a point in a guidelines range arbitrarily. He cannot just say: "Whenever I have to sentence anyone, I calculate his guidelines range and sentence him at the top of it. That saves me so much time and thought!" The judge must justify, by reference to the sentencing factors in 18 U.S.C. § 3553(a), the sentence he imposes—and must do so whether it is inside or outside the applicable guidelines range. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *United States v. Washington*, 739 F.3d 1080, 1081–82 (7th Cir. 2014).

One might have expected the judge to do that in response to the pointed question put to him by the defendant's lawyer. He did not. He seems to have been startled by the question. He had invited it, but the invitation seems to have been intended as a last chance for the lawyers to make their record; the judge did not expect that he would be asked to make *his* record. He said: "this is the first time in my life anyone has asked me why I imposed a penalty at any point. I'm sure they have those thoughts. But I was not prepared for your question. And the reason I imposed that penalty [the 97-month sentence] was that the Defendant had earned it. He had conducted [*sic*—this was probably the court reporter's mistaken transcription of "committed"] a very seri-

ous crime, one that not only has injured him by causing his incarceration, but would have caused injury to other people by the use of that drug. And it was my view that that was the appropriate sentence to impose." The lawyer came back at the judge by repeating: "That would be true of all offenders charged just like him." To which the judge replied: "I don't intend to engage in a debate with you today about the sentence I imposed. … If you are not satisfied, you may take an appeal." And he did.

Under the regime of *Booker*, a judge can have his own penal theory, as long as it is consistent with the sentencing factors in 18 U.S.C. § 3553(a); and we can imagine a judge offering a reasoned basis for sentencing heroin dealers at the top of the applicable guidelines range. But neither in this case nor, so far as we are able to discover, in any other case has Judge Stiehl articulated such a theory. And while we cannot find any recent sentences that he's imposed on heroin dealers, we have found 14 sentences imposed by him on cocaine dealers since 2010, and in only two did he impose the guidelines maximum.

We reversed one of his cocaine sentences several months ago, explaining that

> the district court did not meaningfully explain why 97 months was an appropriate sentence for [the defendant]. The court's summary assertion that it had "considered all the factors of 18 U.S.C. § 3553(a)" is procedurally insufficient. See, e.g., *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). And the court's reference to the seriousness of drug crimes in general did nothing to explain why, in the context of [the defendant's] particular offense, the court settled on a sentence of 97 months. True, the judge expressed hope

> that, while incarcerated, [the defendant] would take advantage of rehabilitation programs, but rehabilitative programming is an inappropriate basis for imposing a prison sentence. *See* 18 U.S.C. § 3582(a); *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011). And, in any event, the court does not appear to have relied on the availability of rehabilitation to justify [the defendant's] term of incarceration. In short, the court's terse remarks do not reflect "an individualized assessment based on the facts presented," *Gall* [*v. United States*, *supra*], 552 U.S. at 50; the record is simply too thin for meaningful review.

*United States v. Washington*, 739 F.3d 1080, 1081–82 (7th Cir. 2014).

In fairness to the judge, until his contretemps with the defendant's lawyer over the 97-month sentence that the judge had decided to impose in this case, the sentencing hearing had focused almost exclusively on the government's request for an above-guidelines sentence of 180 months. The focus was understandable. A prison term of that length—nearly double the top of the guidelines range—was a heavy lift for the government and was vigorously opposed by the defense. It's not surprising that the arguments for and against the government's recommendation consume nearly 40 pages of the 49-page sentencing transcript. The defense attorney's argument was almost entirely concerned with defeating the prosecutor's request for 180 months. The attorney did offer his own recommendation—a sentence at the low end of the guidelines range—but this part of his argument occupies less than a page of transcript.

The judge summarily rejected the government's recommendation (and the government has not appealed that rejec-

tion), but said very little to justify a 97-month sentence, and what he did say was in the nature of a conclusion rather than a reason. Perhaps he can be forgiven for being caught off guard by the defense attorney's question, everyone's attention having been focused up to then on whether 180 months was an appropriate sentence. Still, the 97-month sentence was unexplained and therefore must be vacated and the case remanded for resentencing. (The resentencing will be before a different judge because Judge Stiehl has retired.)

REVERSED AND REMANDED.