In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2275

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DELVAREZ LONG,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cr-00212-001-TWP-TAB-1 — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED AUGUST 1, 2023 — DECIDED AUGUST 22, 2023

Before WOOD, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This case presents another variation on the challenges posed for sentencing judges by instructions from Congress and the Supreme Court about the required, permissible, and prohibited roles of rehabilitation in sentencing.

Appellant Delvarez Long is serving an above-guideline prison term for possessing a firearm after being convicted of

a felony. He argues on appeal that the district court plainly erred by imposing a prison term in part to rehabilitate him, contrary to 18 U.S.C. § 3582(a) as construed in *Tapia v. United States*, 564 U.S. 319 (2011). We affirm. Rehabilitation is an important consideration in most sentences. *Tapia* permits a judge to discuss rehabilitation so long as she does not make rehabilitation a primary consideration in deciding whether to impose a prison sentence or how long it should be. Our review of this record does not show a plain error under *Tapia*.

I.    *Factual Background and Procedural History*

Indianapolis police officers arrested Long on an outstanding warrant for domestic battery. They discovered a stolen firearm in his waistband and cocaine in plain view. Long was charged under 18 U.S.C. § 922(g)(1) with possessing a firearm as a convicted felon.

Long decided to plead guilty, and the district court combined his guilty-plea hearing with his sentencing. The court found his advisory guideline range was 33 to 41 months in prison. Long's counsel argued for a 33-month sentence and asked the court to recommend that the Bureau of Prisons place him in a drug treatment program. The government argued for an above-guideline sentence of 60 months on the ground that Long's criminal history score was under-representative.

After hearing from counsel and Long himself, the court said it intended to impose an above-guideline sentence of 51 months in prison to be followed by three years of supervised release with conditions of drug testing and treatment. The court then explained its reasons. It started by noting that Long had four felony convictions and several other convictions,

and that the guideline calculation understated his criminal history. Long's history of domestic violence, in particular, was "very concerning" to the court, which considered as relevant conduct an incident in which Long threatened his girlfriend with what she believed to be a handgun, waved it in her face, and threatened to hurt her. Long was charged with felony intimidation in state court for this conduct, but the charge was ultimately dismissed. The threat did not add to his criminal history calculation.

The court recognized that Long had been "afforded the opportunity for rehabilitation by probation, parole, supervision, community corrections, jail sentences, and even a prison sentence." After acknowledging that Long accepted responsibility for his crime, the court emphasized that it was "a very serious offense" to carry a loaded, stolen handgun while possessing cocaine. The court noted that Long had admitted he was addicted to drugs and requested treatment, and that he "was abusing cocaine on a regular basis … had possession of some fentanyl, which is a very dangerous and deadly drug, … [a]nd he's experimented with both ecstasy and Adderall." The court also mentioned that Long owed approximately $80,000 in child support and had limited employment history, though he had obtained a high school diploma in prison.

The court then made the statements at the heart of this appeal:

> Mr. Long needs to gain control of his life by maintaining sobriety, establishing legitimate employment, and taking care of his children. He needs some domestic violence assistance, because he was—he's violent. He's domestically

> violent. He needs to get his child support paid and become a productive member of society.
>
> So the Court is ordering this sentence to promote respect for the law and provide just punishment, and it is a long enough time that the defendant can participate in prison industries, as well as learn some job skills so that — that he can use upon his release. Those are the reasons the Court intends to impose the stated sentence.

The court asked counsel if they had any reasons why sentence should not be imposed as stated. Counsel responded no, and the court imposed the announced sentence. The court recommended to the Bureau of Prisons that Long be allowed to participate in a drug treatment program.

II. *Analysis*

On appeal, Long argues that the district court plainly erred by imposing his prison sentence in part to rehabilitate him. He and the government agree that plain-error review applies because he did not object in the district court when he had the opportunity to do so before the sentence was actually imposed.

To succeed on appeal, Long must establish that (1) there was an error, (2) it was clear or obvious, and (3) it affected his substantial rights. If he makes those showings, we must exercise our discretion to decide whether (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (applying plain-error review to sentencing). We decide this case at step two: if there was an error, it was not clear or obvious.

Under 18 U.S.C. § 3582(a), sentencing courts must "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." The Supreme Court held in *Tapia v. United States*, 564 U.S. 319, 332 (2011), that the statute "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." Rehabilitation under § 3582(a) includes "treatment, training, and like programs" of the kind mentioned in § 3553(a)(2)(D), such as "educational or vocational training, medical care, or other correctional treatment." *Tapia*, 564 U.S. at 333. Although rehabilitation is one of the statutory purposes of sentencing under § 3553(a), "imprisonment is not an appropriate means of pursuing that goal." *Id.* at 328.

A district judge facing a convicted defendant, and considering § 3582(a) and *Tapia*, on one hand, and the need to consider rehabilitation on the other, faces—pick your metaphor—a cognitive tightrope, or a minefield, or the challenge of not thinking about the elephant in the room. See *United States v. Shaw*, 39 F.4th 450, 459 (7th Cir. 2022). In deciding first whether the sentence should include any prison time, the judge must consider rehabilitation as a goal but may not use prison for rehabilitative purposes. If a prison term will be imposed, the judge may not consider the possibility that prison will contribute to rehabilitation in deciding how long the prison term should be. But the judge should also consider rehabilitation in deciding other aspects of the sentence, including a supervised release term and conditions, as well as fines and restitution. Finally, in explaining the sentence, the judge may encourage the defendant to take advantage of any rehabilitation opportunities available in prison, such as treatment and counseling for substance abuse and addiction, educational programs, and job training and work experience. In

explaining the entire sentencing package, which aims to serve multiple goals, it can be easy for even the most conscientious judge to refer to rehabilitation goals without making unmistakably clear that those goals did not affect the length of the prison term. See *id.* at 461–62 (Hamilton, J., concurring).

So how does *Tapia* play out in appellate review of sentencing transcripts? The parties disagree. Long relies on statements in *Shaw* and *United States v. Spann*, 757 F.3d 674 (7th Cir. 2014), to argue that a district court errs under *Tapia* when it imposes a sentence based *at all* on a defendant's need for rehabilitation. Long would have us search sentencing transcripts for even a hint that rehabilitative aims have affected a prison term. The government argues, on the other hand, that *Tapia* prevents a court only from imposing a prison term based *primarily* on rehabilitation.

The government's interpretation of *Shaw* matches the majority view among circuits and is truer to *Tapia*, which allows sentencing courts to discuss rehabilitation.[1] *Tapia* explained

---

[1] Most circuits (First, Second, Third, Fourth, Fifth, Sixth, and Eighth) agree that *Tapia* errors exist only when the record demonstrates that rehabilitation was the district court's primary consideration in determining the length of the prison term. *United States v. Del Valle-Rodriguez*, 761 F.3d 171, 174–75 (1st Cir. 2014); *United States v. Lifshitz*, 714 F.3d 146, 150 (2d Cir. 2013); *United States v. Schonewolf*, 905 F.3d 683, 691–92 (3d Cir. 2018); *United States v. Bennett*, 698 F.3d 194, 201–02 (4th Cir. 2012); *United States v. Garza*, 706 F.3d 655, 660 (5th Cir. 2013); *United States v. Deen*, 706 F.3d 760, 768 (6th Cir. 2013); *United States v. Replogle*, 678 F.3d 940, 943 (8th Cir. 2012). Three circuits (Ninth, Tenth, and Eleventh) hold that a prison term cannot be based on any rehabilitative concerns. *United States v. Joseph*, 716 F.3d 1273, 1281 n.10 (9th Cir. 2013); *United States v. Thornton*, 846 F.3d 1110, 1116 (10th Cir. 2017); *United States v. Vandergrift*, 754 F.3d 1303, 1310 (11th Cir. 2014).

that a district court does not err by "discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." 564 U.S. at 334.

In *Shaw*, we concluded that the district court stepped over the *Tapia* line by selecting the length of the prison sentence *only* because "[t]hat period of time will give [the defendant] a chance, hopefully, … to look at the programs [he would] be offered in prison in a totally different light." 39 F.4th at 457. We explained that the need for rehabilitation "is not applicable when a court imposes a term of imprisonment." *Id.*

*Shaw* went on to clarify, however, that district courts may mention rehabilitation "as one of several reasons for the imposed prison terms" if the context makes clear "that other permissible factors were the primary considerations behind the prison sentences." *Id.* at 458. Remand was needed in *Shaw* because "the court did not explain how any other considerations factored into the length chosen," and the transcript gave the impression that rehabilitation was the "driving force" for the decision. *Id.* at 459; see also *id.* at 458–59 (emphasizing that rehabilitation was the "primary reason," "only reason cited," and the "sole basis" for the district court's choice of sentence).

Long also relies on a comment in *Spann* that a judge would violate the rule of *Tapia* by "basing his sentence even in part" on the defendant's need to learn skills in prison. 757 F.3d at 675. But it is hard to reconcile that dictum with the broader teaching of *Shaw*. Apart from one non-precedential decision,[2] we have not cited *Spann* for the proposition that a court may not base a prison sentence even "in part" upon rehabilitation. Meanwhile, other cases from this circuit and others align with

---

[2] *United States v. Elam*, 587 F. App'x 337, 338 (7th Cir. 2014).

*Shaw*'s focus on whether rehabilitation was the district court's primary reason for its decisions about prison.

Both *United States v. Burrows*, 905 F.3d 1061 (7th Cir. 2018), and *United States v. Lucas*, 670 F.3d 784 (7th Cir. 2012), are instructive. In each case, we affirmed the defendant's sentence because context showed that the sentencing court did not impose the sentence to promote rehabilitation. In *Burrows*, the district court explained that the sentence would be "sufficient … to address the harm" and to give the defendant "time to avail [him]self of the sex offender treatment as an adult." 905 F.3d at 1063. We determined that—when read in context with the court's other justifications for the sentence (general and specific deterrence and the seriousness of the offense)—the district court's statement did not show that it imposed the sentence primarily to promote rehabilitation. *Id.* at 1067–68; cf. *Shaw*, 39 F.4th at 458 (vacating sentence where explanation indicated rehabilitation was "the primary reason for the length of the imposed prison term").

In *Lucas*, the district court said that its sentence would "serve to hold the defendant accountable, serve as a deterrent, protect the community, provide the opportunity for rehabilitative programs and achieve parity with sentences of similarly-situated offenders." 670 F.3d at 795. We concluded that "the mere mention that Lucas would have the opportunity to take part in rehabilitative programs" was not prohibited under *Tapia*. *Id*.

The district court's explanation for its sentence in this case is close to the courts' explanations in *Burrows* and *Lucas*. Here, the court did not impose Long's sentence based primarily on rehabilitation. After announcing the intended sentence, the court first noted, without providing any other reason, that the

sentence "takes into account his criminal history that the Court believes is understated, as well as the relevant conduct" in threatening his girlfriend. The court then referred to Long's criminal history and the seriousness of his offense throughout its explanation:

- Long is … coming before the Court for being a felon in possession of a firearm. This is Mr. Long's fourth felony conviction. The defendant has a juvenile delinquency and adult criminal history. As an adult, he has convictions for operating without a license, possession of cocaine, forgery, resisting law enforcement, driving while suspended, and the battery with bodily injury to a pregnant woman.

- The Court agrees with the government that his criminal history is understated in the guideline calculation. The Court also considers as relevant conduct the June 27th incident in which the defendant threatened his girlfriend with what she believed to be a handgun…. And this history of domestic violence is very concerning to the Court. She was definitely afraid of this defendant.

- The defendant committed a very serious offense when he carried this loaded and stolen handgun with cocaine in his possession.

Only in the district court's final statements were there references to Long needing rehabilitation. Cf. *Bennett*, 698 F.3d at 201 (affirming where district court did not refer to

rehabilitative needs until the end of its sentencing explanation and had repeatedly referred to a permissible reason for the prison term). The court noted here that Long's "employment history is limited," that he "had drug addictions and he's requesting treatment," and that he "needs some domestic violence assistance, because … he's violent." Still, the court did not connect these rehabilitative needs to the length of Long's proposed prison term.

But the court went on to mention a rehabilitative program—vocational training—in connection with the length of the sentence. The sentence would be "long enough" to allow Long to "participate in prison industries, as well as learn some job skills." In the next sentence, the court said that, with the other factors it had discussed at length, "Those are the reasons the Court intends to impose the stated sentence."

Although the court did not place great emphasis on rehabilitation, this passage supports an inference that prison programming was at least *a* reason for the length of the prison term. Under the strict reading of *Tapia* that Long urges, one could find error here. But the transcript overall does not show that rehabilitation drove the court's choice of the prison term.[3]

For these reasons, we doubt that the district court erred, but we do not need to decide that question. At a minimum,

---

[3] Another indication that the court did not impose Long's prison sentence to promote rehabilitation can be found in its written Statement of Reasons. The court noted that the above-guideline sentence was based on Long's understated criminal history and history of domestic violence, without mentioning rehabilitation. The form includes boxes for "drug or alcohol dependence" and "to provide the defendant with needed educational or vocational training," but the court did not check either as an explanation for the prison sentence.

any mistake would not have been "clear or obvious," as required to reverse on plain-error review. *Molina-Martinez*, 578 U.S. at 194. Whether and to what extent the court weighed rehabilitation in determining Long's sentence is not clear from the transcript, and as noted, the legal standard remains the subject of debate among circuits. "Plain" errors "cannot be subtle, arcane, debatable, or factually complicated." *United States v. Ramirez*, 783 F.3d 687, 694 (7th Cir. 2015); accord, *United States v. Holman*, 840 F.3d 347, 355 (7th Cir. 2016) (affirming sentence on plain-error review; court's comments about defendant's addiction permissibly explained benefits of available treatments or treated addiction as mitigating factor).

The ambiguity in the district court's explanation is not surprising. Section 3582(a) and *Tapia* put district courts in a difficult position. Courts must ignore rehabilitation as a goal when imposing or lengthening a prison sentence, even though they must consider rehabilitation at the same hearing, when deciding about supervised release and appropriate conditions. See 18 U.S.C. § 3583(c). As we said in *Shaw*, *Tapia* forces courts to demonstrate "their consideration of the offender's need for rehabilitation while also disavowing that consideration as a reason for any resulting term of imprisonment." 39 F.4th at 459. We ordinarily want a judge to engage with a defendant's individual history and challenges rather than to apply the Sentencing Guidelines mechanically. In that engagement, though, *Tapia* can cast a shadow over thoughtful comments that address a defendant's unique circumstances or encourage a defendant to take advantage of rehabilitative programs while incarcerated.

We therefore reaffirm the thrust of *Shaw*: to show a *Tapia* error, a defendant must show that the district court focused

exclusively or disproportionately on rehabilitation in decid-
ing whether to impose a prison term or how long a term
should be. References to rehabilitative programs in prison in
passing or when describing opportunities available while
serving a sentence selected for permissible reasons will not
lead us to find error, let alone plain error. At the same time, it
might be helpful for a sentencing court to include a candid
and explicit disclaimer to the effect that rehabilitation goals
did not affect whether a prison term was imposed or how long
it would be.

The judgment of the district court is AFFIRMED.